UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EUGENE ANDERSON, et al.                                    CIVIL ACTION

VERSUS                                                     NO. 10-153

ILLINOIS CENTRAL RAILROAD                                  SECTION "N" (1)
COMPANY

## ORDER AND REASONS

Before the Court is the Motion for Summary Judgment of Defendant Illinois Central Railroad Company ("IC"). (Rec. Doc. 29). This motion is opposed by Plaintiffs Shannon and Eugene ("Gene") Anderson and their minor son, "JA". (See Rec. Doc. 52). The Court heard oral argument on this motion on Wednesday, March 23, 2011. While the Minute Entry from this argument reflects that the motion was ordered submitted (see Rec. Doc. 63), the Court actually partially granted summary judgment on the argument of "attractive nuisance", finding that doctrine inapplicable to the facts of this case.[1] (See Transcript, pp. 40-41). The remaining arguments made in the motion

---

[1] Under Louisiana's version of the "attractive nuisance" doctrine, all of the following circumstances must exist before any heightened duty arises: (1) The injured child must have been too young to appreciate the danger; (2) There must be reason to anticipate the presence of children because of some attraction on defendant's premises, or some danger where children had a right to be; (3) The instrumentality causing the injury must present a strong likelihood of an accident; (4) The danger must be one not ordinarily encountered, and (5) Defendant must have failed to take reasonably prudent precautions under the circumstances. *Ibieta v. Phoenix of Hartford Ins. Co.*, 267 So. 2d 748 (La.App. 4 Cir. 1972); see also *Butler v. City of Bogalusa*, 258 So.2d 599 (La.App. 1 Cir. 1972); *Watkins v. Illinois Cent. R.R.*, 9 F.3d 1547 (5th Cir. 1993); *Smith v. Crown-Zellerbach, Inc.*, 638 F.2d 883 (5th Cir. 1981). Louisiana jurisprudence is clear that the "attractive nuisance" doctrine must be "accorded limited application and employed only with caution." *Patterson v. Recreation and Park Comm'n for the Parish of East Baton Rouge*, 226 So.2d 211

will be addressed herein.

I.      **BACKGROUND**

Mr. and Mrs. Anderson, JA (who had just turned 10 years old at the time of the injury that it the subject of this lawsuit), and JA's two sisters live in a neighborhood located on the south side of the railroad tracks near IC's Harahan, Louisiana switching yard (hereinafter "Mays Yard"). Behind the Andersons' house is a large, concrete-lined drainage canal (see Exhibit A to Rec. Doc. 29) bordered on the west side by a fenced servitude area. That grassy right-of-way and drainage

---

(La.App. 1 Cir. 1969). The reason for the limited application of the doctrine is the tremendous burden placed on the property owner when the doctrine is applicable.

Moreover, though a defendant may be liable under the "attractive nuisance" doctrine if it maintains a "condition upon premises where children are likely to trespass which creates an unreasonable risk of serious bodily harm to such children," "the degree of the danger to children must be balanced against the condition's social utility, the duty not to create a foreseeable risk to children being balanced with the social interest in favor of an owner's legitimate use of his own land." As specifically applied to railroads, one Louisiana court noted as follows:

> In view (a) of the social utility of the railroad's conduct, (b) the relative difficulty of safeguarding standing railroad vehicles from climbing children, and (c) the comparatively slight danger to children ordinarily occasioned thereby, a railroad is not liable when children are injured upon a freight or other train car simply because the company left it unattended and should reasonably have been aware of the presence of children in the vicinity who might climb upon it.

*Stanley v. Missouri Pacific Railroad Co.*, 179 So.2d 490 (La.App. 3 Cir. 1965) (citations omitted).

The "attractive nuisance" doctrine requires that the injured child must have been too young to appreciate the danger. Here, JA was 10-years-old at the time; however, there is ample testimony from him indicating that he understood the area was dangerous. The Fifth Circuit's *Watkins* decision supports this conclusion. In *Watkins*, the Fifth Circuit considered deposition testimony of an injured 12-year-old who had admitted that he knew that it was dangerous to be around a moving train. Because a reasonable finder of fact could not have found that the plaintiff in *Watkins* did not appreciate the dangers of playing near a moving train, the Court held that summary judgment on the "attractive nuisance" claim was appropriate. The same holds true here.

canal runs perpendicular to IC's east-west right-of-way and tracks about 2000 feet west of the entrance to Mays Yard.  At the point where the canal and servitude area abut the southern boundary of IC's railroad right-of-way, a chain link fence has been erected across the entire width of the grassy right-of-way.  (Exhibit B to Rec. Doc. 29).  The chain link fence does not span the width of the drainage canal itself.  (Exhibit C to Rec. Doc. 29).

On January 26, 2009, JA and 2 other boys (all minors) accessed the grassy right-of-way area by squeezing through a gap between an entirely separate chain link fence located at the end of Stephen Street and an adjacent wooden fence running along the property line of a residence located on that corner.  (Exhibit C to Rec. Doc. 29; Exhibit D to Rec. Doc. 29, p. 22).  Once through that fence and onto the servitude property, the 3 boys then walked until they encountered the other chain link fence that spans the width of the right-of-way area near the IC right-of-way.  The boys gained access to IC's right-of-way by walking on the top of the concrete side of the drainage canal and around that chain link fence.  (Exhibit D to Rec. Doc. 29, p. 26).  Once on the tracks, the boys began looking for "black, shiny rocks" for approximately 45 minutes.  (Id. at p. 27).  (The boys, who had just recently been to the "train tracks" and had found shiny rocks, decided to go back to the train tracks to look for more shiny rocks.  (Exhibit A to Rec. Doc. 52, pp. 21-22)).

In his deposition, JA admitted that he did not inform his parents that he was going to the railroad tracks to look for rocks because he knew his parents "would have never let [him] go." (Exhibit D to Rec. Doc. 29, p. 27).  He admitted that although his parents never explicitly told him not to play by the railroad tracks, he knew that doing so was dangerous and not a "good thing for [him] to be doing."  (*Id.* at pp. 27-28).  He admitted that he knew trying to climb on a train was both

"dangerous" and "stupid". (*Id.* at p. 47).

According to JA, at approximately 5:00 p.m., he was walking along side a stationary IC train when the train began to abruptly move, making a loud "kaboom" noise and startling him. (*Id.* at p. 47). As he attempted to jump away from the train, he claims that he slipped on the rocks alongside the railroad track. His foot became caught underneath the adjacent railcar and atop the rail beneath the wheel of that freight car, causing injuries to his 4th and 5th toes on his right foot. *Id.*

On the day of the alleged accident, IC train R98971-26, en route from Destrehan to Mays Yard, was being operated by locomotive engineer J.C. Toben ("Toben") and conductor Shawn McRea ("McRea"). (Exhibit E to Rec. Doc. 29, pp. 17-18). According to the crewmembers, at approximately 5:00 p.m., as the inbound train was pulling into Mays Yard traveling approximately 10 miles per hour, the crew stopped the lead locomotive at the yard crossing to allow McRea to dismount the locomotive and to line the #6 switch to allow the train to be brought completely within the yard on the #6 track. (Exhibit E to Rec. Doc. 29, pp. 26-28, 30; Exhibit F to Rec. Doc. 29, pp. 13-16). The crew then completely yarded the train, dismounted and proceeded inside the Yard office to complete paperwork. At that time, the crew members were told by the yardmaster on duty that an incident involving a pedestrian had occurred. (Exhibit E to Rec. Doc. 29, pp. 65-69). It was only then that the IC crewmembers became aware of the incident. Neither of IC's crewmembers observed children playing on or around the tracks as they approached Mays Yard on the afternoon of January 26, 2009. (Exhibit E to Rec. Doc. 29, p. 66; Exhibit F to Rec. Doc. 29, pp. 29-30). Notably, JA was injured on the train tracks leading to Mays Yard, not in Mays Yard itself.

IC asserts in the instant motion that it owed no duty to protect JA from the harm that he encountered in knowingly and illegally trespassing upon the train tracks.

## II.   LAW AND ANALYSIS

### A.   Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); see also *Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir.1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir.2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir.2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." See *id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir.2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated

assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir.2002).

### B.     Discussion and Analysis

The pivotal issue in this case boils down to whether IC owed a duty to Plaintiffs in this particular instance to prevent the harm that befell JA. First, this Court disagrees with Plaintiffs that this is a case to be analyzed under Louisiana Civil Code article 2317.1 (liability of a premises owner for injuries caused by a vice, defect, or ruin). This is not a case where a vice, defect or ruin in or on IC's property caused the injury. The injury occurred as the train was proceeding as only it could - on the tracks themselves. There has been no allegation that the train or train tracks contained any vice or defect. Instead, this case presents general negligence claims against the IC arising under Louisiana Civil Code article 2315. This injury occurred on train tracks outside of IC's Mays Yard.

Utilizing the duty-risk analysis[2], this Court ultimately concludes that IC is not liable to

---

[2]Under Louisiana law, the four-part duty-risk analysis is well-established: (1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred? (2) Did the defendant owe a duty to the plaintiff? (3) Was the duty breached?(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?, i.e., Was the breach of duty the legal or proximate cause of the damage? *Roberts v. Benoit*, 605 So.2d 1032, 1042 (La.1992). The plaintiff has the burden of proving every essential element of his case by a preponderance of the evidence. *Jordan v. Travelers Insurance Company*, 257 La. 995, 245 So.2d 151 (1971); see also Prosser, TORTS, § 41, p. 269 (5th ed. 1984).

Not every act leading up to an injury can be said to be a cause of an injury; rather, the act or acts taken as a whole must be more probably than not a substantial factor without which the injury would not have occurred. *Laird v. Travelers Ins. Co.*, 263 La. 199, 267 So.2d 714, 717 (1972); *Hauck v. Facility Mgmt. of La., Inc.*, 637 So.2d 1154, 1156 (La.App.1994). "Proximate cause" is cause "which immediately precedes and produces the effect, as distinguished from remote, mediate, or predisposing cause," or cause "from which the fact might be expected to follow without the concurrence of any unusual circumstance." *Beard v. Coregis Ins. Co.*, 968 So.2d 278, 283 (La.App.2007) (citations omitted). " 'Proximate' cause primarily inquires

Plaintiffs under Louisiana tort law.  Importantly, IC had no general duty to protect JA. Longstanding jurisprudence provides that a railroad company owes no duty to one who enters a railroad without license, invitation, or other right, except after discovering his peril, the railroad must refrain from willfully or wantonly injuring a trespasser.  *Doyle v. Thompson*, 50 So.2d 505, 508 (La.App. 1 Cir. 1951); see also *Rice v. Kansas City Southern Ry. Co.,* 194 So. 444 (La.App. 1 Cir. 1940).  Persons having no invitation to go upon railway tracks, but who choose to place themselves thereon for their own convenience, take existing conditions as they find them, and cannot require the railroad company to protect them from dangers which are as apparent and open to their own observation as to the company.  *James v. Thompson*, 35 So.2d 146 (La.App. 2 Cir. 1948).  If a person attempts to pass between the cars of a railroad train and is injured by the sudden and unexpected movement of the train, he cannot recover, unless it is proven that those in charge of the train actually knew of his attempt to cross, or had actual notice of his placing himself in danger. *Reno v. Yazoo & M.V.R. Ro.*, 70 So. 43 (La. 1915); *Platt v. Vicksburg S. & Pacific Ry. Co.*, 64 So. 282 (La. 1914).

  Here, the evidence demonstrates that crewmembers Toben and McRea had no knowledge of JA's presence that would have invoked any duty on the part of IC to prevent the accident. Both Toben and McRea testified in their depositions that they did not observe any children on or in the vicinity of the tracks as they approached Mays Yard on the afternoon of January 26, 2009. (Exhibit

---

whether a party's duty extends to the particular risk in question that causes injury to another party in a tort action." *Id.* (citing *Frost v. Albright*, 460 So.2d 1125, 1127 (La.App.1984), *writ denied*, 462 So.2d 1266 (La.1985)).

E to Rec. Doc. 29, p. 66; Exhibit F to Rec. Doc. 29, pp. 29-30). Indeed, they did not become aware of the incident until they had completely "yarded" the train, dismounted and proceeded inside the office at Mays Yard to complete paperwork. (Exhibit E to Rec. Doc. 29, pp. 65-69). Further, one of JA's friends, KM, testified that as the train approached the canal area, the 3 boys went down inside of the canal itself to hide from the train crew. (Exhibit G to Rec. Doc. 29, p. 33). Thus, the boys saw the train moving on the tracks, but made certain their presence near the tracks was undetected.

In an attempt to create a legal duty on the part of IC, Plaintiffs argue that IC was aware that members of the general public, including children, frequented the area. Plaintiffs cite *Doyle v. Thompson, supra,* wherein the Court references 45 Corpus Juris 750 § 147, 65 C.J.S., Negligence § 24, which provides, "[w]here trespassers on property are habitual and known to the owner, so as to impose upon him the duty to anticipate the presence of trespassers, the owner is bound to use reasonable care to prevent injury to trespassers." Plaintiffs complain that IC did nothing to protect the public.[3] Plaintiffs make three main arguments in an attempt to establish a duty on the part of IC: (1) no signage; (2) no fencing; and (3) no sounding of the train's horn prior to moving.[4] The Court will address each of these arguments in turn.

---

[3] To the extent that Plaintiffs point to evidence of police reports indicating trespassing incidents in Mays Yard itself, the Court finds these to be of no moment, as this injury occurred outside of Mays Yard, on one portion of the thousands of miles of train tracks that span this country.

[4] Indeed, it is uncontested that the horn was not sounded prior to moving, following a 22-second stop.

9

First, with regard to Plaintiffs's argument that IC is burdened with a duty to erect trespassing signage around its property and along its rights-of-way, Louisiana law has long been clear that the presence of the tracks themselves serves to warn all in the area of the potential danger of being in the area. As stated in *Perry v. Louisiana Ry. & Navigation Co.*:

> The very presence of a railroad track is a solemn warning. It speaks louder and more eloquently than words that a dangerous instrumentality-a railroad train-may pass over the track at any movement, and, furthermore, this instrumentality-the train-is confined to that track.

142 So. 736, 741 (La.App. 2 Cir. 1932). Louisiana law imposes no duty on railroads to erect warning signs or "no trespassing signs" on or around its tracks to warn of potential dangers implicit in trespassing on the tracks. Further and importantly, JA admitted that he did not need a sign to tell him that he did not belong on the area around the railroad's tracks:

> Q: You knew that the area with the railroad tracks on it and the rock and trestle, you knew that area didn't belong to your parents, right?
>
> A: Yes.
>
> Q: You knew it belonged to somebody else. Do you generally play in property that belongs to people that you don't know?
>
> A: No.
>
> Q: Okay. And you knew that the area that you and your playmates were in was an area that you were not supposed to be in?
>
> A: Yes.
>
> Q: And you really didn't need a sign to tell you that you didn't belong there, you knew you didn't belong there; isn't that right?
>
> A: Yes.

(Exhibit D to Rec. Doc. 29, pp. 92-93). While Plaintiffs' argue: "[i]n fact, later in his deposition JA testified that if there would have been a warning sign he would not have gone to the area" (Rec. Doc. 52, p. 11), the Court finds this argument to be without merit. JA's deposition testimony shows that he was aware that he was not supposed to be on the IC right-of-way regardless of signage (or a lack thereof). Further, the Court notes, again, that this injury did not occur inside IC's Mays Yard. Certainly, the railroad has no duty to erect signage along thousands of miles of tracks it traverses, especially when the train tracks themselves are (and have historically been) enough of a warning that a train may pass and imminent danger is present (i.e, a train is confined to the tracks; it cannot simply "go around" an individual who is too close to the train tracks). See *Perry,* 142 So. 736, 741 (La.App. 2 Cir. 1932).

The same reasoning would apply to Plaintiff's argument regarding a lack of fencing. Surely, the railroad has no duty to erect even more fencing along mile after mile of tracks, especially when the train tracks themselves are enough of a warning that a train may pass and imminent danger is present. See *Perry,* 142 So. 736, 741 (La.App. 2 Cir. 1932). Further, the evidence indicates that JA and his friends admittedly went around two separate fences to access IC's right-of-way (i.e., the train tracks), thus thwarting such effort to keep them away from the tracks.

Last, Plaintiffs argue that IC failed follow its own rule in sounding the horn to warn of the train's impending movement, when the crew could not see the end of the train. (Exhibit E to Rec. Doc. 52, pp. 36-37; Exhibit F to Rec. Doc. 52, p. 25). Plaintiffs point the Court to 49 C.F.R. 217, which requires that certain rail carriers, IC included, file a copy of its operational rules with the Federal Railroad Administration ("F.R.A."), periodically test its *employees* to ensure knowledge of

11

the carrier's operating rules, and maintain certain records regarding the carrier's compliance program and testing results. However, the failure to follow an operating rule does not amount to negligence *per se*, as such is not recognized in Louisiana. While Plaintiffs cite *Perkins v. Texas and New Orleans Railroad Co.*, 147 So.2d 646 (La. 1962), to support this position, the Louisiana Supreme Court in that case reasoned that, despite finding operational negligence on the part of the train crew, the plaintiff in that case did not establish that the defendant's negligence was a cause-in-fact of the accident. Here, similarly, Plaintiffs must establish a causal link between the alleged violation of the horn-sounding rule and JA's harm.

In the *Perkins* case, the plaintiff argued that, had the train been traveling at a proper speed, the driver of the automobile would "conceivably" have had some additional time to take measures to avert disaster and the deceased would have had some additional time to extricate himself from danger. The *Perkins* plaintiff essentially reasoned that the collision and loss of life "might not" have occurred had the train been traveling at a slower rate of speed. 243 So.2d at 838. The Louisiana Supreme Court determined:

> On the facts of this case, we must reject the escape theory advanced in this argument. Because of the deficiencies in the evidence which we have already noted, it is devoid of evidentiary support. The record contains no probative facts from which the Court can draw a reasonable inference of causation under this theory. In essence, the argument is pure conjecture.

*Id.* The Court finds similarly here.

This Court concludes that Plaintiffs have failed to establish a causative link between the failure to sound the horn and JA's injury. There has been no admissible showing that, had the whistle sounded: (1) JA could have heard it from his location; (2) that JA, in particular, would have

known that the whistle he heard was coming from the lead locomotive of the train that injured him, as opposed to another locomotive in the yard; or (3) that JA, in particular, would have even understood the significance of the distant whistle sounding and the impending movement of the train. The Court notes that IC has filed a motion in limine on the basis of *Daubert* seeking to exclude the opinion of Plaintiff's expert, Paul F. Byrnes, regarding the issue of whether JA could have heard the locomotive's whistle from the location he was in at the time it was supposed to be sounded. Plaintiffs have also attempted to support Byrnes' opinion with a written declaration from another of their experts, Richard Gill. However, this declaration was provided after the completion of discovery and after the time for disclosure of purported expert opinion evidence has passed. However, even if the Court considered these opinions, the second and third elements have not been shown.

During his deposition, Byrnes was specifically asked what evidence he had that JA would have appreciated the railroad significance of the whistle blow (i.e., why the operating rules require the horn to be blown). Mr. Byrnes responded: "I have no evidence that JA had any familiarity with the CN operating rules." (Exhibit A to Rec. Doc. 57, p. 141). Under Louisiana's duty risk analysis (discussed in n. 1 *supra*), Plaintiffs have failed to establish that JA's injury was within the scope of any duty owed to blow the horn, if any such duty exists. Here, the Court concludes that, to the extent IC owed a duty to sound the horn before moving the train, that duty was not intended to protect JA from this harm or to prevent this harm. The testimony elicited from Toben and McRea reveals that the purpose of sounding the horn is to alert IC's employees in the yard that the train is about to move. (See Exhibit E to Rec. Doc. 52, pp. 36-37). Notably, there is no evidence indicating

(or jurisprudence suggesting) that such a horn-blowing duty was intended to protect members of the general public located thousands of feet behind the front of the train.

Further, the evidence does not establish that JA would have understood what two "toots" of the lead locomotive's whistle meant and moved out of the way in sufficient time to prevent injuring himself. Indeed, Plaintiffs' argument amounts to pure conjecture in this regard, which is insufficient to defeat summary judgment.

### III. CONCLUSION

As sad and unfortunate of a case as this is, the Court finds that IC owed no duty to Plaintiffs to prevent this particular injury. While Plaintiffs argue that granting this summary judgment would establish that JA was 100% at fault and that IC was 100% free of fault, such is incorrect. Apportionment of fault has not been considered as Plaintiff has failed to establish that IC owed any duty to Plaintiffs or that any such duty owed was intended to prevent the terrible harm that befell JA. Considering the foregoing,

**IT IS ORDERED** that the **Motion for Summary Judgment of Defendant Illinois Central Railroad Company (Rec. Doc. 29)** is **GRANTED.** Plaintiffs' action is hereby **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 4th day of April, 2011.

**KURT D. ENGELHARDT**
**United States District Judge**